## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ARLENE MILLER,          )
                               )

Plaintiff,          )
                               )      Civil Action No. 09-1166

v.            )
                               )

MELLON LONG TERM DISABILITY   )      Magistrate Judge Lisa Pupo Lenihan
PLAN, *et al.,*                )
                               )      Doc. Nos. 9, 23, & 34

Defendants.       )

## <u>OPINION</u>

<u>LENIHAN</u>, Magistrate Judge.

Currently before the Court for disposition are three motions: (1) a Motion to Dismiss (Doc. No. 9) filed by Defendants Mellon Bank, N.A., Mellon Financial Corporation, The Bank of New York Mellon Corporation, Corporate Benefits Committee, and Sheila Miller (the "Mellon Defendants"); (2) a Motion to Dismiss (Doc. No. 23) filed by Life Insurance Company of North America ("LINA") and CIGNA Corporation ("CIGNA") (together the "Insurance Defendants"); and (3) a Motion for Leave to File an Amended Complaint (Doc. No. 34) filed by Plaintiff, Arlene Miller. This case is brought pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1001, 1132(a)(1)(B), for review of a denial of long-term disability benefits and determination of her rights to past and future benefits under the terms of her employer's long-term disability plan. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1). Venue in this District is proper under 29 U.S.C. §1132(e)(2).

For the reasons set forth below, the Court finds it would be futile to allow Plaintiff to file the proposed amended complaint with one exception, and therefore, will grant in part and deny in part Plaintiff's Motion for Leave to File an Amended Complaint (Doc. No. 34). Accordingly, the motions to dismiss are not moot. In consideration of the pleadings, motions and supporting papers filed in this case, the Court will grant the Mellon Defendants' Motion to Dismiss (Doc. No. 9) as to Mellon Bank, N.A., Mellon Financial Corporation, The Bank of New York Mellon Corporation, the Corporate Benefits Committee, and Sheila Miller, on all Counts. In addition, the Court will grant the Insurance Defendants' Motion to Dismiss (Doc. No. 23). Finally, the Court will grant the Motions to Dismiss Plaintiff's Demand for a Jury Trial filed by all of the Defendants.

## I.     FACTUAL BACKGROUND/PROCEDURAL HISTORY

Because this action comes before the Court on a motion to dismiss, the Court must accept as true all of Plaintiff's allegations of fact and must view the facts in the light most favorable to her. The relevant facts are as follows.

Arlene Miller (hereinafter "Plaintiff") is a participant in the Defendant Mellon Long-Term Disability Plan (hereinafter "Plan"),[1] an employee welfare benefit plan that provides disability benefits. (Mellon Long-Term Disability Plan Summary Plan Description dated January 2004 ("SPD") at 25.[2]) Thus, the Plan constitutes an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1). The Plan is funded through a trust established by

---

[1] The Mellon Long Term Disability Plan, as amended and restated effective January 1, 2004, is attached to the Insurance Defendants' Motion to Dismiss (Doc. No. 23) as Ex. 1 to Second Declaration of Sheila Miller.
[2] The SPD is attached to Insurance Defendants' Motion to Dismiss (Doc. No. 23) as Ex. 2 to Second Decl. of Sheila Miller.

Mellon Bank, N.A., to make long-term disability ("LTD") benefit payments. (SPD at 26; Plan at Preamble.) The trust constitutes the sole source of benefits under the Plan. (Plan at Preamble.)

Defendant Corporate Benefits Committee (hereinafter "CBC") was the Plan Administrator of the Mellon Long-Term Disability Plan until July 2009, when it was dissolved.[3] (Plan at §5.l; SPD at 25.) Defendant Sheila Miller acted as the "Plan Manager" and, as such, was responsible for the day-to-day administration of the Plan. (Plan at §1.25.)

Defendant Mellon Bank, N.A., is named as the "Plan Sponsor" in § 1.3 of the Plan, as well as in the SPD.[4] Defendant Mellon Financial Corporation is described in the Plan Document as a Pennsylvania Corporation of which the CBC is a part. (Plan at §§ 1.9, 1.12.) Defendant The Bank of New York Mellon Corporation ("BNY Mellon Corp.") was created in May 2007 as a result of a merger between Mellon Financial Corporation and The Bank of New York Company, and, by virtue of which, is the successor-in-interest to Mellon Financial Corporation. Thus, Mellon Financial Corporation ceased to exist on July 1, 2007 when BNY Mellon Corp. was formed. In addition, Mellon Bank, N.A. changed its name to BNY Mellon, National Association, effective July 1, 2008. Thus, the Plan Sponsor at the time this litigation was commenced appears to be BNY Mellon, N.A., which is not named as a defendant in this litigation.

Defendant LINA was retained by the Plan to provide ministerial services, such as information collection on an as-requested basis. (Compl. ¶ 7.) Defendant CIGNA Corporation was designated as the claims administrator and, as such, performed certain claims administrative functions for the Plan. (SPD at 25.)

---

[3] *See* Declaration of Sheila Miller dated 1/12/2010 at ¶ 5 (Doc. No. 9-1), attached to Mellon Defendants' motion to dismiss.

[4] *See also* SPD at 25.

On or about February 2004, the Plaintiff began receiving short-term disability benefits. Upon the expiration of her eligibility for short-term benefits, the Plaintiff applied to the Plan for long-term disability ("LTD") benefits. Plaintiff's claim was initially denied. However, on June 20, 2005, the Plaintiff was advised by letter, that the CBC had reversed the denial, and directed that monthly benefits be paid in the amount of $2,210.83. The monthly benefits would continue for a period of two years, retroactive to August 30, 2004. The letter also advised the Plaintiff that CIGNA would be conducting a subsequent review of her claim to determine whether she would be entitled to receive benefits as of August 30, 2006, the two year anniversary of her initial benefit eligibility date.

Section 2.3 of the Plan provides that a participant is considered "Totally Disabled" following the two year anniversary if she is "wholly and continuously unable" to engage in any occupation or perform any work for compensation or profit for which he is or may become reasonably fitted by education, training, or experience. (Plan at 8.)[5]

On September 22, 2006, CIGNA recommended that the Plan deny further benefits because of a purported failure by the Plaintiff to provide further medical evidence. Defendant Sheila Miller, by letter dated October 12, 2006, advised the Plaintiff that no benefits were payable as of October 15, 2006, based on her failure to provide further medical evidence indicating that as of August 30, 2006, she was disabled within the meaning of the "any occupation" standard set forth in § 2.3(b) of the Plan. In response, on March 15, 2007, Plaintiff appealed the determination to the CBC. By letter dated April 17, 2007, Sheila Miller indicated that the CBC had received the Plaintiff's appeal. On October 29, 2007, the CBC advised the

---

[5] This test has been referred to by the parties as the "any occupation" standard.

4

plaintiff that her appeal was denied and that her claim for benefits was deemed terminated as of October 12, 2007.

On August 28, 2009, Plaintiff instituted the present litigation, pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132 (a)(1)(B), seeking payment of monies allegedly due to her under the terms of the Plan, and judgment directing Defendants to honor the Plaintiff's alleged entitlement to future disability benefits under the terms of the Plan. The Plaintiff specifically contends that Defendants' determination terminating disability benefits ignored lay and medical evidence in Plaintiff's administrative file; contradicted defendants' own previous determination that the medical evidence was sufficient to establish that Plaintiff was entitled to benefits; ignored and disregarded the debilitating effect plaintiff's disability had on her ability to respond to requests for medical information and to provide medical information; ignored medical evidence establishing that plaintiff was disabled within the meaning of the "any occupation" standard set forth in §2.3(b) in the Plan Document; failed to request Plaintiff submit to medical, psychological, or functional capacity examinations; and, ignored additional indicia of disability as evidenced by the award of social security disability benefits in August of 2005. (Compl., ¶¶ 39, 44-45.)

In response, the Mellon Defendants filed a Motion to Dismiss and supporting brief on January 12, 2010. The Insurance Defendants also responded by separately filing a Motion to Dismiss and supporting brief on February 12, 2010.[6] In essence, the Mellon Defendants and Insurance Defendants (collectively, the "non-Plan Defendants") contend that they are improper parties in a denial of benefits claim under 29 U.S.C. §1132(a)(1)(B), and therefore, request that

---

[6] The Insurance Defendants also incorporate by reference the arguments raised by the Mellon Defendants in their brief in support of the motion to dismiss and adopt those arguments as their own.

the Complaint as to them be dismissed with prejudice. The non-Plan Defendants, as well as Defendant Mellon Long Term Disability Plan, also move the Court to dismiss the Plaintiff's demand for a jury trial, contending that Plaintiff has no right to a jury trial under ERISA. The Plaintiff filed briefs in opposition to both motions to dismiss on March 3, 2010. The Defendants filed reply briefs in support of their respective motions to dismiss on March 23, 2010.

While the motions to dismiss were pending, Plaintiff filed a Motion for Leave to File an Amended Complaint (Doc. No. 34) on April 2, 2010, which attempts to address the arguments raised by the Defendants in their motions to dismiss. Defendants have filed a response objecting on the basis that it would be futile to allow the proposed amendments. The motions, having been fully briefed and responded to, are now ripe for disposition.

## II.     MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

### A.     <u>Standard of Review</u>

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." In *Foman v. Davis,* the Supreme Court delineated the grounds that would justify denying leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment". *Foman v. Davis,* 371 U.S. 178, 182 (1962). The grant or denial of leave to amend is within the sound discretion of the district court; however, failure to provide a reason for denying leave to amend is considered an abuse of that discretion. *Id.*; *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Foman, supra*). In determining whether the proposed amendment would be futile, courts apply the same standard as that applied to motions to dismiss under Rule 12(b)(6) of the Federal

Rules of Civil Procedure. *Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir. 2000) (citation omitted). The Rule 12(b)(6) standard is discussed, *infra,* at Part III, Section A.

### B. <u>Analysis</u>

Plaintiff seeks leave of Court to file an amended complaint to address the arguments raised in the two motions to dismiss. Specifically, Plaintiff seeks to plead additional facts to further demonstrate that each of the non-Plan Defendants acted in a fiduciary capacity with regard to her claim for denial of LTD benefits. Plaintiff also seeks to plead additional facts to demonstrate the liability of Defendant CIGNA Corporation as the alter ego of its subsidiary, LINA. Plaintiff's proposed amended complaint adds four new claims: (1) a claim for injunctive relief under 29 U.S.C. § 1132(a)(3) against all Defendants, requesting an order directing the payment of future benefits; (2) a claim for breach of fiduciary duty against the Expanded Mellon Defendants[7] for imprudent investment and management of Plan assets under 29 U.S.C. §§ 1104(a)(1), 1109, and 1132(a)(2); (3) a claim for breach of fiduciary duty against the Expanded Mellon Defendants[8] for failure to act in accordance with documents and instruments governing the Plan under 29 U.S.C. §§1104(a)(1), 1109, and 1132(a)(2); and (4) vicarious liability against Defendants Mellon Bank, N.A., Mellon Financial Corporation, and its successor-in-interest, BNY Mellon Corp. (collectively, the "Bank Defendants"), under the doctrine of *respondeat superior*, on Plaintiff's claims to recover benefits under Section 1132(a)(1)(B), for equitable relief under Section 1132(a)(3), and for breach of fiduciary duty under Sections 1104(a)(1),

---

[7] Plaintiff's reference to the "Mellon Defendants" in her proposed Fourth and Fifth Claims includes the Plan, Sheila Miller, Mellon Bank, N.A., Mellon Financial Corporation, BNY Mellon Corp., the CBC, the Benefits Investment Committee of BNY Mellon Corp. ("BIC"), and John Doe, an unidentified employee of BNY Mellon Corp. Prop. Am. Compl., ¶27. This group includes other entities/persons (the Plan, John Doe, and BIC) which are not included in the Court's collective reference, "Mellon Defendants." Therefore, for clarity's sake, the Court will refer to the expanded group of Mellon defendants described in Plaintiff's proposed Fourth and Fifth claims as the "Expanded Mellon Defendants."

[8] *See* note 7, *supra.*

1109, and 1132(a)(2). Finally, the amended complaint seeks to add four new parties: (1) Connecticut General Corporation; (2) CIGNA Holdings, Inc.; (3) John Doe, an unidentified employee of Defendant BNY Mellon Corp.; and (4) the Benefits Investment Committee of BNY Mellon Corp. ("BIC").

For the reasons that follow, the Court finds that the proposed amendments would not establish plausible claims against the non-plan Defendants, nor is there any support under either ERISA or federal common law for adding the four new claims and four new parties proposed by Plaintiff. Thus, permitting the proposed amendments would be futile.

### 1. Plaintiff's Proposed Third Claim for Equitable Relief Under 29 U.S.C. §1132(a)(3)

Plaintiff seeks to assert four new claims in her proposed amended complaint, the first of which is a claim for equitable relief against all Defendants in the form of an order directing the payment of future benefits under 29 U.S.C. §1132(a)(3), designated as "A Third Claim For Which Relief Can Be Granted" in the proposed amended complaint. The factual allegations offered in support of this claim consist of the assertion that the administrative record establishes that she was disabled at all relevant times and continues to be disabled under the "any occupation" standard. Prop. Am. Compl., ¶ 99. Plaintiff further asserts that pursuant to sections 2.3 and 3.1 of the Plan, she is entitled to continue receiving LTD benefits until she reaches age 65. *Id.* at ¶ 101. Consequently, Plaintiff asserts that under Section 1132(a)(3), she is entitled to "injunctive, equitable and remedial relief (a) directing defendants, as fiduciaries of the Plan, to continue to pay to plaintiff Plan benefits based on plaintiffs' [sic] ongoing disability and entitlement to benefits within the meaning of the Plan; until such time as there has been a

determination by the defendants, in accordance with the procedures set forth in the Plan for rendering such determinations, that plaintiff is no longer disabled." *Id.* at ¶ 102.

In support of her motion for leave to amend the complaint to add this Third Claim against all Defendants, Plaintiff argues that while the language in Section 1132(a)(1)(b) clearly contemplates a declaratory judgment with regard to determining future rights to benefits, no court has held that Section 1132(a)(1)(B) provides a mechanism for actually ordering a plan to pay such benefits, and the Mellon Defendants do not contend otherwise. For that relief, Plaintiff submits the courts have held that recourse to Section 1132(a)(3) is appropriate. In support of this argument, Plaintiff relies on *Reinart v. Giorgio Foods, Inc.,* No. 97-CV-2379, 1997 WL 364499, *5 (E.D.Pa. June 25, 1997) (citing *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 1077-78 (1996)); *Benamara v. Plan Administrators of Mellon Long Term Disability Plan*, No. Civ.A. 05-1433, 2006 WL 279101 (W.D.Pa. Feb. 3, 2006) (citing *Hoagland v. Erin Group Administrators, Inc.,* No. 05CV0099, 2005 WL 1528383 (M.D.Pa. June 28, 2005)).

In response, Defendants counter that the relief requested in paragraph 102 of the proposed amended complaint, on its face, is the very relief that a claim under Section 1132(a)(1)(B) already authorizes solely from an ERISA plan. Defendants further contend that Plaintiff's attempt to distinguish between legal relief, in the form of an award of benefits, or equitable relief, in the form of an injunction ordering the payment of benefits, is unavailing based on the Supreme Court's decision in *Great West Life & Annuity Company v. Knudson*, 534 U.S. 204, 221 (2002) (In Section 1132(a)(1)(B), "Congress authorized 'a participant or beneficiary' to bring a civil action 'to enforce his rights under the terms of the plan,' without reference to whether the relief sought is legal or equitable.") Because Section 1132(a)(1)(B) expressly authorizes equitable and injunctive relieve from the ERISA plan in enforcing rights

under the plan, clarifying rights to future benefits under the plan, and for benefits due under the

plan, and thus, an adequate remedy exists under that section, Defendants submit that Plaintiff

may not assert a claim under the catch-all provision under Section 1132(a)(3) for "other

appropriate" equitable relief.  Defendants rely on *Variety Corporation v. Howe,* 516 U.S. 489, 515

(1996), as support for this argument.  Defendants further contend that *Benamara,* upon which

Plaintiff relies, is not controlling here because the district court in that case failed to give proper

weight to the *Variety* decision and also failed to consider that the relief requested was really

indistinguishable.

The Court agrees with the Defendants that under *Variety* and *Knudson,* Plaintiff's

proposed Third Claim for equitable relief under Section 1132(a)(3) is inappropriate.  In *Variety,*

the Supreme Court explained:

> [Section 502(a)(3)] of ERISA authorizes " appropriate " equitable
> relief. We should expect that courts, in fashioning "appropriate"
> equitable relief, will keep in mind the "special nature and purpose
> of employee benefit plans," and will respect the "policy choices
> reflected in the inclusion of certain remedies and the exclusion of
> others." *Pilot Life Ins. Co.* [*v. Dedeaux*, 481 U.S. 41, 54 (1987)].
> *See also* [*Mass. Mut. Life Ins. Co. v.*] *Russell*, 473 U.S. [134, 147
> (1985)]; *Mertens* [*v. Hewitt Assoc.,* 508 U.S. 248, 263-264 (1993)].
> Thus, we should expect that where Congress elsewhere provided
> adequate relief for a beneficiary's injury, there will likely be no
> need for further equitable relief, in which case such relief normally
> would not be "appropriate." *Cf. Russell, supra*, at 144.

516 U.S. at 515.  In determining whether the requested relief is appropriately framed in equity

for purposes of Section 1132(a)(3), the Supreme Court has cautioned that a court must look past

the label attached by the plaintiff.  In this regard, the Supreme Court further explained:

> "Almost invariably . . . suits seeking (whether by judgment,
> injunction, or declaration) to compel the defendant to pay a sum of
> money to the plaintiff are suits for 'money damages,' as that phrase
> has traditionally been applied, since they seek no more than

> compensation for loss resulting from the defendant's breach of
> legal duty."

*Knudson,* 534 U.S. at 210 (quoting *Bowen v. Massachusetts,* 487 U.S. 879, 918-19 (1988)

(Scalia, J., dissenting)).

When the Court looks past the label here, it is clear that the equitable relief requested by

Plaintiff is essentially "a claim for benefits expressed in equitable language." *Clark v. Feder*

*Semo & Bard, P.C.,* 527 F.Supp. 2d 112, (D.D.C. 2007) (holding plaintiff who sought "such

declaratory, legal, equitable and remedial relief as the Court deems appropriate" to ensure her

receipt of all benefits due was essentially "a claim for benefits expressed in equitable language,"

and thus, failed to seek appropriate equitable relief under §1132(a)(3)) (quoting *Fairview Health*

*Servs. v. Ellerbe Becket Co. Employee Med. Plan,* Civ. File No. 06-2585, 2007 WL 978089, at

*6 (D. Minn. Mar. 28, 2007)).  Here the relief Plaintiff seeks in her proposed Third Claim under

Section 1132(a)(3) is "injunctive, equitable and remedial relief (a) directing defendants, as

fiduciaries of the Plan, to continue to pay to plaintiff Plan benefits based on plaintiffs' [sic]

ongoing disability and entitlement to benefits within the meaning of the Plan; until such time as

there has been a determination by the defendants, in accordance with the procedures set forth in

the Plan for rendering such determinations, that plaintiff is no longer disabled."  Proposed Am.

Compl., ¶102.  This relief is essentially a claim for benefits expressed in equitable language, and

thus, authorized by Section 1132(a)(1)(B).

Moreover, contrary to Plaintiff's argument, courts have held that Section 1132(a)(1)(B)

does provide a mechanism for ordering a plan to pay benefits due. *See, e.g., Clark, supra; Mass.*

*Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146-147 (1985) ("To recover the benefits due her,

[plaintiff] could have filed an action pursuant to §502(a)(1)(B) to recover accrued benefits, to

obtain a declaratory judgment that she is entitled to benefits under the provision of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future."); *Smith v. Life Ins. Co. of N. Am.,* 466 F.Supp. 2d 1275, 1292 (N.D.Ga. 2006) (finding claim for equitable relief under §1132(a)(3), requesting court to enter order enjoining defendant from reducing plaintiff's disability benefits based on personal injury settlement so long as plaintiff remained disabled, was inappropriate as an adequate remedy existed under §1132(a)(1)(B)) (citing *Katz v. Comprehensive Plan of Group Ins.,* 197 F.3d 1084, 1088-89 (11th Cir. 1999)). In *Smith,* the district court concluded that because it could award back pay to plaintiff and 'clarify future rights' to benefits under Section 1132(a)(1)(B), all of the relief plaintiff sought was available under Section 1132(a)(1)(B), and thus, he was precluded from proceeding on his claim for equitable relief under Section 1132(a)(3). *Id.* at 1292. Likewise here, since Plaintiff has an adequate remedy under Section 1132(a)(1)(B) for the relief she seeks, there is no basis for invoking the catch-all relief provision contained in Section 1132(a)(3).

In so concluding, the Court does not find the authority relied upon by Plaintiff to be persuasive for several reasons. *Benamara* was decided pre-*Twombly*,[9] and thus, the court applied a less stringent pleading standard in ruling on the Rule 12(b)(6) motion. Thus, query whether the district court in *Benamara* would have reached the same conclusion had it applied *Twombly.* Second, the issue raised in the motion to dismiss filed by the defendant in *Benamara* was whether the plan administrator and employer were improper parties, *not* whether plaintiff could maintain a claim under the catchall provision, Section 1132(a)(3). Thus, the holding in

---

[9] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (delineating new standard for deciding Rule 12(b)(6) motions).

*Benamara* regarding prospective relief is really *dictum*.[10]  Finally, unlike in the case at bar, the Section 1132(a)(3) claim in *Benamara* was supported by an allegation suggesting a breach of fiduciary duty. Equally unpersuasive is *Reinart.*  That case was before the court on cross-motions for summary judgment, and the question for resolution was whether the claims administrator was a proper party, not whether equitable relief was appropriate where Section 1132(a)(1)(B) provides an adequate remedy.  1997 WL 364499, at *5-6.  Thus, Plaintiff's authority is simply inapposite here.

Because Plaintiff's attempt to add the proposed Third Claim for Equitable Relief under Section 1132(a)(3) fails as a matter of law, it would be futile to allow Plaintiff to amend her complaint to add this claim.

### 2.     Plaintiff's Proposed Fourth and Fifth Claims for Breach of Fiduciary Duty against Expanded Mellon Defendants

Next, Plaintiff proposes to add two claims for breach of fiduciary duty under 29 U.S.C. §§1104(a)(1), 1109 and 1132(a)(2)—one for imprudent investment and management of Plan assets, and the other for failure to act in accordance with documents and instruments governing the Plan--against the following Defendants"  Mellon Long-Term Disability Plan, Sheila Miller, Mellon Bank, N.A., Mellon Financial Corporation, BNY Mellon Corp., and the CBC, as well as proposed new defendants, the BIC and John Doe (collectively referred to by Plaintiff as the "Mellon defendants", but as noted above, the Court will refer to this group as the "Expanded

---

[10] In any event, the Court believes *Hoagland,* upon which the court in *Benamara* relied for its ruling *in dicta*, is also inapposite. Again, the court was deciding whether the plan administrator was an improper party, and in so doing, the district court in *Hoagland*  failed to acknowledge the plain language of Section 1132(a)(1)(B) or to consider the Supreme Court's decisions in *Varity* or *Knudson.*  2005 WL 1528383, at *4.  In addition, the motion to dismiss in *Hoagland* was also decided under the pre-*Twombly* standard.

Mellon Defendants"). In support of her claim for imprudent investment and management of Plan assets, Plaintiff alleges:

> The actions of the Mellon defendants in engineering the Buyout and leaving a *de minimus* corpus in the existing funded trust were subject to the [fiduciary duties set forth in 29 U.S.C. §1104(a)(1)]. By their acts and omissions in connection with the decision to divest the Plan of virtually all of its assets in order to obtain an insurance policy which, upon information and belief, would not provide for the payment of benefits and other appropriate relief in the event plaintiff were to prevail, the Mellon defendants breached each of these fiduciary duties by failing to insure that the Plan possessed and possesses sufficient assets to comply with a judgment entered in this action directing the Mellon defendants to pay benefits and additional relief to plaintiff in conformity with the terms of the Plan.

Prop. Am. Compl., ¶106. Section 1104(a)(1) provides, in relevant part:

> . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

> (A) for the exclusive purpose of:

>> (i) providing benefits to participants and their beneficiaries; and

>> (ii) defraying reasonable expenses of administering the plan;

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. §1104(a)(1).  In support of her claim that the Expanded Mellon Defendants failed to

act in accordance with the documents and instruments governing the Plan, Plaintiff alleges:

> The Plan Document required that the decision to divest the Plan of
> virtually all of its assets and to purchase a policy of insurance
> which, upon information and belief, would only provide benefits
> for disabilities occurring after the policy went into effect, be
> undertaken only upon sufficient provision being made to secure the
> Plan's ability to pay benefits to plaintiff or, for that matter, any
> other participant or beneficiary whose claim might give rise to an
> entitlement to benefits which could not be paid under the insurance
> policy.  The decision of the Mellon defendants to divest the Plan of
> virtually all of its assets without making sufficient provision for
> payment of benefits not covered by insurance, violated the terms of
> the documents governing the plans.

Prop. Am. Compl., ¶115.[11]  In addition, Section 1109 provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed upon
> fiduciaries by this subchapter shall be personally liable to make
> good to such plan any losses to the plan resulting from each such
> breach, and to restore to such plan any profits of such fiduciary
> which have been made through use of assets of the plan by the
> fiduciary, and shall be subject to such other equitable or remedial
> relief as the court may deem appropriate, including removal of
> such fiduciary.

29 U.S.C. §1109(a).  Section 1132(a)(2) authorizes the Secretary of Labor, a participant,

beneficiary, or fiduciary to bring a civil action for appropriate relief under Section 1109.

To get around the Defendants' argument in their motions to dismiss that the only proper

party against whom a claim for denial of benefits under Section 1132(a)(1)(B) may be brought is

the Plan, Plaintiff attempts to assert additional facts by way of amended complaint to show that

the non-Plan Defendants are fiduciaries and that they breached a fiduciary duty under 29 U.S.C.

---

[11] Plaintiff fails to cite to the specific section in the Plan document where this provision purportedly appears.  Upon the its own review, the Court was unable to locate any such provision in the Plan document.

§§1104(a)(1) and 1109(a).[12]   The Court finds the facts asserted by Plaintiff in her proposed amended complaint do not establish a plausible claim against the non-Plan Defendants for breach of fiduciary duty.

In order to maintaining a breach of fiduciary duty claim against the non-Plan Defendants under ERISA, it is axiomatic that Plaintiff must first establish that each is a fiduciary.  Section 3(21)(A) of ERISA provides the following definition of a fiduciary:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.  Such term includes any person designated under section 1105(c)(1)(B) of [title 29].

29 U.S.C. § 1002(21)(A).[13]   ERISA further provides that a corporation may be a "person" under the definition of fiduciary.  29 U.S.C. § 1002(9).  It is well established that a determination about whether a claimant is entitled to benefits under the terms of the plan documents is a fiduciary act connected to plan administration.  *Aetna Health Inc. v. Davila,* 542 U.S. 200, 219-20 (2004) (citing *Varity Corp. v. Howe,* 516 U.S. 489, 512 (1996)).  Fiduciary status does not simply attach to any administrative activity, but rather, only to the person (or entity) who has *final authority* to authorize or disallow a claim for benefits under the plan.  *Varity,* 516 U.S. at 512 (citing Dep't of Labor Interpretative Bulletin § 75-8, 29 C.F.R. § 2509.75-8 (1995)) (emphasis

---

[12] Plaintiff initially contends that she believes the facts alleged in the original complaint are sufficient to show that the non-Plan Defendants are fiduciaries but, in any event, proposes additional facts to establish their fiduciary capacities.
[13] Section 1105(c)(1)(B) provides in relevant part: "[The plan document] may expressly provide for procedures . . . for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities. . . ." 29 U.S.C. § 1105(c)(1)(B).

added). In addition, such person must be acting as a fiduciary when determining a claim for benefits. *Davila,* 542 U.S. at 220.

With these precepts in mind, the Court will address the viability of the proposed Fourth and Fifth Claims against each of the Expanded Mellon Defendants.

### a. Mellon Long Term Disability Plan

The breach of fiduciary duty claims against the Plan are completely unavailing. Section 1132(a)(2) allows a claim to be brought by the Secretary, a participant, beneficiary, or fiduciary for appropriate relief under 29 U.S.C. § 1109. However, it is well settled that recovery under Sections 1109 and 1132(a)(2) inures to the plan, not the individual. *Leckey v. Stefano,* 501 F.3d 212, 226 (3d Cir. 2007) (citing *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147 (1985); *Knudson,* 534 U.S. at 213); *see also Varity,* 516 U.S. at 515 (citation omitted). As noted by the court of appeals in *Hozier v. Midwest Fasterners, Inc.:*

> Even if plaintiffs could establish that a fiduciary duty owed to them has been breached, it is unclear whether they could recover from defendants in their fiduciary capacity. The liability of fiduciaries is governed by § 409 of ERISA, which provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the ... duties imposed upon fiduciaries by [ERISA] shall be personally liable to make good *to such plan* any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a) (emphasis added). This liability accrues only to the plan itself, not to participants suing in their individual capacities. *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985). Section 502(a)(2) of ERISA entitles individual participants to sue "for appropriate relief" under § 409. 29 U.S.C. § 1132(a)(2). Because § 409 liability accrues only to the plan itself, § 502(a)(2) in effect allows individual participants to sue "in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n. 9, 105 S.Ct. at 3090 n. 9. Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action is plainly not authorized by either § 409 or § 502(a)(2).

*Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1162 n. 7 (3d Cir. 1990). Therefore, Plaintiff, as a participant, can only bring a claim pursuant to §§1132(a)(2) and 1109 *on behalf of* the Plan, not *against* the Plan.[14]

### b. The "Bank Defendants

In the case at bar, the Bank Defendants submit that the allegations in the proposed amended complaint do not establish that any of them is a fiduciary under ERISA. In support of this argument, the Bank Defendants submit that the proposed amended complaint does not contain any well-pleaded facts to the effect that any of them exercised or had actual control over, influenced or dictated the actions, decisions or operations of the CBC or BIC in any manner or respect, or any control over the decision of the LTD Plan to deny Plaintiff's appeal seeking LTD benefits. In response, Plaintiff contends that the facts clearly demonstrate the Bank Defendants maintained actual control over the operations of the CBC to a degree which warrants a finding that t hey were fiduciaries. In support, Plaintiff points to paragraph 14 of the proposed amended complaint, wherein she asserts that Mellon Financial Corp. and BNY Mellon Corp. had the authority to remove members of the CBC and/or CIB.

The Court agrees with the Bank Defendants. In her proposed amended complaint, Plaintiff acknowledges the statement of Defendant Sheila Miller that Defendant Mellon Financial Corporation ceased to exist on July 1, 2007, when BNY Mellon Corp. was formed. Plaintiff also acknowledges that Mellon Bank, N.A. changed its name to BNY Mellon, N.A. Yet, Plaintiff continues to name Mellon Bank, N.A. and Mellon Financial Corporation as defendants in the proposed amended complaint. Moreover, none of the factual allegations in the

---

[14] Defendants have not raised the issue of whether Plaintiff has appropriately asserted the breach of fiduciary duty claims in a representative capacity on behalf of the Plan. Because none of the parties addressed this issue, the Court refrains from doing so too.

proposed amended complaint vis a vis BNY Mellon, N.A. or BNY Mellon Corp., shows that either entity (or their predecessors-in-interest) had actual control or influence over, or dictated, the decisions or operations of the CBC in any manner or respect with regard to the decision of the CBC to deny Plaintiff's claim for LTD benefits. Nor does the proposed amended complaint allege that either BNY Mellon, N.A. or BNY Mellon Corp. (or their predecessors-in-interest) had actual control or influence over, or dictated, the decisions or operations of the BIC, in any manner or respect, with regard to the management or investment of Plan assets. Merely asserting that the Bank Defendants had authority to remove members of the CBC and BIC does not make these Defendants fiduciaries with regard to the alleged breaches of fiduciary duties relating to plan administration and/or management and investment of Plan assets. *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1325 (9th Cir. 1985) (employer and board of directors which appointed plan administrator were fiduciaries and liable as such only with regard to the selection of the plan administrator) (citing 29 C.F.R. §2509.75-8 (D-4), (FR-16)); *In re Williams Cos. ERISA Litig.,* 271 F.Supp. 2d 1328, 1339 (N.D.Okla. 2003) (holding because board of directors was only vested with power to appoint, retain, or remove members of benefits committee, its fiduciary liability was limited to only those acts) (citing *Indep. Ass'n of Publishers' Employees, Inc. v. Dow Jones & Co., Inc.,* 671 F.Supp. 1365, 1367 (S.D.N.Y. 1987); 29 U.S.C. §1002(21)). And the proposed amended complaint does not contain any allegations to suggest, let alone show, that the Bank Defendants somehow breached a fiduciary duty in the appointment or removal of members of the CBC or BIC.

Consequently, the proposed amended complaint fails to plead a factual basis to show a plausible claim against Defendants Mellon Bank, N.A., Mellon Financial Corporation, or BNY Mellon Corp.

19

## c.      Sheila Miller

Likewise, the Court finds that the factual allegations in the proposed amended complaint do not establish that Sheila Miller, the Plan Manager, is a fiduciary.  In reaching this conclusion, the Court is guided by the decision of the Court of Appeals for the Third Circuit in *Taylor v. Peoples Natural Gas Company,* 49 F.3d 982 (3d Cir. 1995).  In that case, the Court of Appeals addressed the standards under which an individual employee may be held liable as an ERISA fiduciary:

> [I]ndividuals, whose activities are limited "within a framework of policies, interpretations, rules, practices, and procedures made by other persons, fiduciaries with respect to the plan," cannot be individually liable as fiduciaries under ERISA, since they fail to exercise "the discretionary authority or discretionary control" over the plan required for the direct imposition of fiduciary liability. *See* ERISA § 3(21)(A), 29 U.S.C.A. §1002(21)(A) (West Supp. 1993).

49 F.3d at 987 (quoting Dep't of Labor Regulation § 2509.75-8, 29 C.F.R. § 2509.75-8, Q & A D-2).  Thus, the *Taylor* court held that a plan sponsor's "Supervisor of Employee Benefits" was not an ERISA fiduciary, as his activities were limited to administrative ministerial functions, such as advising employees of their rights and options under the plan, preparing reports concerning participants' benefits, and calculating the costs of alternative plan amendments on behalf of the plan administrator. *Id.* at 982.[15]

Like the plan sponsor's employee in *Taylor,* Sheila Miller did not have any discretionary authority.  Rather, Sheila Miller's responsibilities were solely ministerial in nature, as evidenced by the plain language of the Plan.  Section 1.25 defines the Plan Manager as the "person(s),

---

[15] *See also Robco of Am., Inc. v. Ins. Co. of N. Am.,* 845 F.Supp. 1112, 1116 (W.D.Pa. 1994) (holding third-party administrator's role in administration of plan, consisting of claims processing, did not rise to the level of discretionary control required for fiduciary status (citing *Confer v. Custom Eng'g Co.,* 952 F.2d 34, 36 (3d Cir. 1991); other citation omitted)).

designated pursuant to Section 5.2(d), who is (are) responsible for the day-to-day administration of the Plan." Plan, §1.25. Section 5.2(d) elaborates on the responsibilities of the Plan Manager: "The Plan Manager(s) shall be responsible for the day to day administration of the Plan and shall act solely within the framework of the policies, interpretations, practices, and procedures established by the CBC and, as such, shall be considered as acting solely in a ministerial capacity." Plan, §5.2(d). Thus, the Plan explicitly limits Defendant Sheila Miller's authority to ministerial tasks which, under *Taylor* and the DOL regulations, does not rise to the level of discretionary authority in administration of the Plan required for fiduciary status. Plaintiff's new allegation in the proposed amended complaint, that as Plan Manager, Sheila Miller had "'discretionary authority or discretionary responsibility in the administration of [the] [P]lan' in accordance with 29 U.S.C. §1002(21)(A)", does not establish that she is a fiduciary, as it is a conclusory allegation, which the Court may disregard for purposes of the pending motions. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009).

In addition, none of the *factual* allegations set forth in the proposed amended complaint regarding Defendant Sheila Miller shows that she is a fiduciary. For example, in paragraph 6 of the proposed amended complaint, Plaintiff asserts that at all relevant times Sheila Miller acted as the Plan Manager as defined in Section 1.25 of the Plan. In paragraph 36, Plaintiff asserts that Section 2.2 of the Plan "states that a participant will be eligible for benefits under the Plan provided that, among other things, the Plan Manager determines that the participant is Totally Disabled within the meaning of § 2.3." Proposed Am. Compl., ¶ 36. In actuality, Section 2.2 of the Plan states that a '[p]articipant shall be *initially* eligible for benefits under the Plan if he satisfies the application requirements of Section 6.2" and if all five enumerated conditions are met, one of which is that the Plan Manager determines that the participant is totally disabled as

defined in Section 2.3.[16] (Emphasis added.) This allegation does not establish any discretionary authority on Sheila Miller's part, but rather, shows merely that she was acting within the "framework of the policies, interpretations, practices, and procedures" established by the Plan Administrator, the CBC, specifically Section 2.3 of the Plan, in determining whether a participant is totally disabled. The authority given to the Plan Manager, Sheila Miller, is indistinguishable from that in *Taylor*, which was found to be ministerial in nature.

In newly added paragraph 41(i), Plaintiff alleges that the Plan Manager sent her a letter on July 24, 2007, advising her that her appeal would be delayed because not all of her doctors had responded to CIGNA's request for information. Proposed Am. Compl., ¶41(i). In paragraph 44, Plaintiff asserts that on October 12, 2006, Sheila Miller sent a letter to Plaintiff ("Initial Determination") in which Defendant Miller informed Plaintiff that the *Plan* determined that no benefits were payable as of October 15, 2006. *Id.* at ¶44. (Emphasis added.) Sheila Miller is also alleged to have sent a letter to Plaintiff on April 17, 2007 acknowledging that the CBC received Plaintiff's appeal. *Id.* at ¶ 50. These allegations demonstrate merely that Sheila Miller was acting solely in a ministerial capacity on behalf of the CBC.

Similarly, the allegations in paragraphs 73, 86, and 87 of the proposed amended complaint again describe ministerial tasks of the Plan Manager (such as ordering IMEs) and demonstrate that Sheila Miller was acting solely in a ministerial capacity when she wrote to Plaintiff on September 21, 2004 informing her of the CBC's decision to initially deny her claim for benefits and on April 17, 2007. Therefore, Plaintiff has failed to allege any facts to suggest, let alone show, that Defendant Sheila Miller was acting in a fiduciary capacity with regard to her

---

[16] Section 2.3 of the Plan sets forth the criteria that shall be considered for determining whether a participant is totally disabled.

handling of Plaintiff's claim for LTD benefits. Accordingly, the proposed amended complaint fails to state a plausible claim for breach of fiduciary duty against Sheila Miller.

### d. CBC

The proposed amended complaint also fails to establish a plausible claim for breach of fiduciary duty as to the CBC. The allegations set forth in paragraphs 12, 13, 14 of the proposed amended complaint, as well as Sections 5.1 and 5.3, establish that the CBC *was* a fiduciary to the extent it exercised discretionary authority or control with respect to the administration of the Plan. In this regard, it appears that when the CBC made a final determination denying Plaintiff's claim for LTD benefits, it was acting in a fiduciary capacity. Plan, §5.3(a)(i). However, the CBC was dissolved in July 2009 and, thus, no longer exists.[17] In any event, under the Plan, the CBC was not authorized to engage in the acts that form the basis of Plaintiff's Fourth and Fifth Claims; those powers are expressly reserved to the BIC. Nor does the proposed amended complaint set forth any allegations of fact showing that the CBC engaged in any conduct involving the management or investment of Plan assets. "Fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions" that ERISA has defined as fiduciary in nature. *Hozier,* 908 F.2d at 1158-59; *see also* 29 U.S.C. §1002(21)(A). Thus, the proposed amended complaint fails to establish that the CBC was a fiduciary with regard to the duties allegedly breached in Plaintiff's Fourth and Fifth Claims. Accordingly, the Court finds the proposed amended complaint fails to state a plausible claim for breach of fiduciary duty against the CBC.

---

[17] The Court further notes that Plaintiff has named two entities with the name CBC as defendants in both the original complaint and proposed amended complaint—the CBC of Mellon Financial Corporation, as well as the CBC of the BNY Mellon Corp. However, in fact, there was only one CBC and it no longer exists.

### e. BIC

As with the CBC, the Plan establishes that the BIC is a named fiduciary when exercising certain powers granted thereunder. Specifically, the BIC is vested with discretionary authority in the management of the Plan assets and investment decisions. However, the BIC's discretionary authority does not include the power to adopt, amend, or terminate the Plan, as said power is expressly reserved to the Plan Sponsor, Mellon Bank, N.A.[18] Plan, §5.3(a)(vi). In support of her breach of fiduciary duty claims, Plaintiff alleges that the Expanded Mellon Defendants engaged in imprudent investment and management of Plan assets and failed to act in accordance with the documents and instruments governing the Plan, when they made the decision to withdraw substantial funds from the Trust, purportedly leaving insufficient funds in the Trust to pay her claim if judgment is entered in her favor. However, Plaintiff does not proffer any allegations to support the conclusion that Defendants engaged in imprudent investment and management of the Plan assets. Rather, she alleges that Defendants withdrew substantial funds from the Trust, purportedly leaving insufficient funds to pay her claim if judgment is entered.

These factual allegations do not support a breach of fiduciary duty claim with regard to a self-funded welfare benefit plan. Instead, the alleged withdrawal of funds from the Trust represents a change in the way the Plan is funded, which is not a fiduciary act, but a business decision made by the Plan Sponsor, not BIC. *Lockheed Corp. v. Spink,* 517 U.S. 882, 890 (1996). The Supreme Court in *Lockheed* concluded that inasmuch as the definition of a fiduciary under ERISA does not include acts involving plan design, amending or terminating a welfare plan is not an act of plan management or administration, and thus, not subject to fiduciary

---

[18] Mellon Bank, N.A., is now doing business under the name BNY Mellon, N.A.

review. *Id.,* 517 U.S. at 890 (citing *Siskind v. Sperry Ret. Program, Unisys,* 47 F.3d 498, 505 (2d Cir. 1995); *Varity,* 516 U.S. at 505); *see also Hozier,* 908 F.2d at 1160-62.

To support her argument that the Expanded Mellon Defendants breached their fiduciary duties by substantially reducing funding in the Trust, Plaintiff relies on Sections 1.23 and 8.1 of the Plan, as well as on *Frulla v. CRA Holdings Inc.*, 596 F.Supp. 2d 275 (D.Conn. 2009). However, such reliance is misplaced. Although the court in *Frulla* held that the fiduciaries may have breached their fiduciary duties by failing to take steps to ensure that the plan sponsor adequately funded the plan, this holding was based on the court's determination that the plan sponsor was *contractually obligated* to provide and fund benefits under the welfare plan, even though ERISA did not impose a minimum funding requirement for welfare plans. *Id.* at 283-84 (emphasis added).[19] To the extent Plaintiff attempts to argue that sections 1.23 and 8.1 of the Plan, when read in conjunction with the allegations in the proposed amended complaint, created an implied contract to provide sufficient fund assets to pay Plaintiff out of trust fund assets, her argument is unavailing. Contrary to Plaintiff's construction of sections 1.23 and 8.1, those provisions do not contain any language to suggest, let alone require, adequate funding. Indeed, section 8.1 provides quite the contrary:

> [A]ny rights created hereunder shall be considered to be non-contractual . . .. The Participants have no vested or non-forfeitable rights to any benefits created under this Plan, including but not limited to benefits that are in pay status. . . . The claims of Participants under the Plan are confined to and are collectible solely from the assets of the Fund which are attributable to the Plan Account.

---

[19] Similarly, in *Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72 (2d Cir. 1996), upon which Plaintiff also relies, the court of appeals was asked to decide whether severance benefits had been contractually vested in two letters exchanged between the participant and plan sponsor. Because this issue presented a material issue of fact, the court of appeals remanded the case to the district court. 87 F.3d at 78.

Plan, §8.1.  In addition, §8.2 provides that the plan sponsor "has the right, in its sole discretion, to cease making contributions under and to the Plan."  Plan, §8.2.  Accordingly, the Court finds no merit to Plaintiff's argument.[20]

Thus, the Fourth Claim against BIC fails for two reasons.  First, in the case at bar, the Plan Sponsor's decision to significantly reduce the amount of the assets in the Trust and purportedly purchase an insurance policy with the funds clearly constitutes a business decision regarding how the Plan would be funded, and the carrying out of that decision resulted in an amendment of the Plan, neither of which is a fiduciary act.  Second, the decision to reduce the funding in the Trust established for the Plan was not made by any of the named Defendants, nor was it made by the BIC.  The Plan expressly reserves that power to the Plan Sponsor, BNY Mellon, N.A., who is not a named party.

And lest Plaintiff attempt to amend her complaint to add BNY Mellon, N.A., such attempt would also be futile because the termination or amendment of a welfare plan is not a fiduciary act as defined under ERISA. *Lockheed,* 517 U.S. at 890 ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries."); *Hozier*, 908 F.2d at 1162.  As the Supreme Court opined in *Curtiss-Wright Corporation v. Schoonejongen,* 514 U.S. 73 (1995), "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time,

---

[20] Indeed, welfare plans, such as the LTD Plan at issue here, are exempted from all of the funding and vesting requirements under ERISA, unlike pension plans.  *Hozier,* 908 F.2d at 1160 (citing 29 U.S.C. §1051(1); *Adams v. AMPCO-Pittsburgh Corp.,* 733 F.Supp. 998, 999 (W.D.Pa. 1989) (citing 29 U.S.C. §§1051(2) & 1081(a)(3)).  Even if the decision to reduce assets and purchase insurance was a fiduciary act, it does not constitute a breach of fiduciary duty because it is entirely proper for a welfare plan, such as the LTD Plan here, to be self-funded, either through or outside of a trust.  In either event, self-funded plans are backed by the general assets of the corporate plan sponsor.  Thus, any change in the *manner* of self-funding would not affect the participant, if she is entitled to LTD benefits.  Moreover, when contributions are made to a trust by the plan sponsor, said contributions are limited annually to the plan's "qualified cost," as that term is defined under I.R.C. §419, 26 U.S.C. §419.  Pursuant to §419, annual contributions to the trust are limited to approximately one-year's worth of welfare benefit payments.

to adopt, modify, or terminate welfare plans." 514 U.S. at 78 (citing *Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 947 (6th Cir. 1990)).

With regard to her Fifth Claim in particular, Plaintiff alleges in paragraph 115 of the proposed amended complaint that the Plan document required that the decision to divest the Plan of virtually all of its assets and to purchase a policy of insurance be undertaken only upon sufficient provision being made to secure the Plan's ability to pay benefits to Plaintiff and any participant or beneficiary whose claim might give rise to entitlement to benefits which could not be paid under the insurance policy, and in failing to make a sufficient provision for payment of benefits not covered by insurance, the Mellon defendants violated the terms of the documents governing the plans. Prop. Am. Compl., ¶ 115. However, Plaintiff fails to identify the section(s) of the Plan Document or other documents which purportedly contain this provision, and the Court's perusal of the Plan Document failed to locate any such provision. Thus, Plaintiff's argument does not find support in the record. At best, Plaintiff's allegations in support of her Fifth Claim are conclusory and thus do not have to be accepted as true in considering a 12(b)(6) motion.

Accordingly, for all of the above reasons, the Court finds the proposed amended complaint fails to state a plausible claim for breach of fiduciary duty against the BIC.

### f. John Doe

Finally, the proposed amended complaint also fails to establish a plausible claim for breach of fiduciary duty as to John Doe, in his capacity as the Global Head of Compensation and Benefits of the BNY Mellon Corp. and as Plan Administrator of the Mellon Long-Term Disability Plan. According to the proposed amended complaint, counsel for the Expanded Mellon Defendants informed Plaintiff's counsel via correspondence that following the

dissolution of the CBC in July 2009, the Plan Administrator is the Global Head of Compensation and Benefits of the BNY Mellon Corp. Prop. Am. Compl., ¶ 23. Plaintiff's attempt to add John Doe is futile because the Plan simply does not authorize the Plan Administrator, whoever that person or entity is, to make decisions regarding the management and/or investment of plan assets, or to amend or terminate the Plan. Moreover, none of the factual allegations in the proposed amended complaint show or event suggest that the Global Head of Compensation and Benefits breached a fiduciary duty owed to Plaintiff in administering the Plan and/or in exercising any of the Plan Administrator's duties set forth in Section 5.3(a) of the Plan, nor could it, since the CBC was the Plan Administrator at all relevant times. *See Pegram v. Herdrich,* 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.") Accordingly, the proposed amended complaint fails to state a plausible claim for breach of fiduciary duty against John Doe in his individual capacity.

However, the current Plan Administrator may be named in its official capacity as a defendant in a §1132(a)(1)(B) claim for recovery of benefits. *Graden v. Conexant Systems Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) (citation omitted); *Hahnemann Univ. Hosp. v. All Shore, Inc.,* 514 F.3d 300, 308 (3d Cir. 2008) (citing *Graden, supra*); *see also* discussion, *infra,* at 42-43. Therefore, the Court will allow Plaintiff leave to amend her complaint, but only with respect to adding the current Plan Administrator in its official capacity.

### 3. Plaintiff's Proposed Sixth Claim for Vicarious Liability Against the Bank Defendants under Doctrine of *Respondeat Superior*

The crux of Plaintiff's proposed Sixth Claim in which she seeks to hold the Bank Defendants vicariously liable under the doctrine of *respondeat superior,* is that CBC and/or BIC, as the agents of the Bank Defendants, through their constituent members, acted within the scope of their authority as employees of the Bank Defendants while engaged in the performance of their duties as designated members of the CBC and/or BIC and while employed by and acting in furtherance of the business of the Bank Defendants. Proposed Am. Compl., ¶120. Consequently, Plaintiff submits the Bank Defendants are vicariously liable for the actions of the CBC and BIC as set forth in the proposed amended complaint. *Id.* at ¶121.

Plaintiff and the Bank Defendants dispute whether *respondeat superior* is a viable theory of recovery in ERISA actions. Plaintiff maintains that it is and submits that based on controlling precedent in this circuit, a participant may recover damages for the benefit of the plan directly from the employer or plan sponsor if she can show that the plan fiduciaries breached their duties, citing *McMahon v. McDowell,* 794 F.2d 100, 109 (3d Cir. 1986). Plaintiff also cites several district court cases in support of her position.[21]

The Bank Defendants advance several arguments in opposition. First, the Bank Defendants contend that because Plaintiff has failed to adequately plead a breach of fiduciary duty claim against any Defendant for the Settlor's/Plan Sponsor's decision to modify its manner of self-funding the LTD Plan, no *respondeat superior* liability can be asserted against any Defendant in Plaintiff's proposed Sixth Claim.

---

[21] *In re Cardinal Health, Inc. ERISA Litig.,* 424 F.Supp. 2d 1002, 1048-49 (S.D.Ohio 2006) (citing cases); *Crosley v. Composition Roofers' Union Local 30 Employees' Pension Plan,* No. Civ.A. 04-5954, 2005 WL 2405979, *7 (E.D.Pa. Sept. 29, 2005).

Second, the Bank Defendants submit that when the members of the CBC and BIC were acting within the scope of their authority as set forth under the terms of the LTD Plan, the employee-members were wearing their fiduciary hats and not acting as employees. Consequently, when acting as a fiduciary, the Bank Defendants posit that the employee-members are liable only under ERISA because the employee's duty to act on behalf of his or her employer is replaced with a fiduciary duty owed only to the plan. Stated another way, under the "two hats" theory, when an employee takes actions regarding the plan, he or she is not acting within the scope of his authority granted by the employer, but rather, is acting within the scope of authority granted by the plan or plan fiduciary.[22] Thus, the Bank Defendants maintain that liability for the members' alleged breaches of fiduciary duty under ERISA cannot be imputed to them on the basis of *respondeat superior* liability, citing several district court cases in support.[23] The Bank Defendants further submit that *respondeat superior* liability does not arise simply because they appointed their officers, directors or employees to fiduciary positions regarding ERISA plans.[24]

For their third argument, the Bank Defendants submit that ERISA preempts common law theories of liability that are not expressly set forth in ERISA's comprehensive and reticulated enforcement scheme, §514(a) and (c)(1), 29 U.S.C. §1144(a) and (c)(1). Consistent with Supreme Court precedent,[25] the Bank Defendants maintain that no reason exists for recognizing an implied ERISA cause of action based on the doctrine of *respondeat superior*, as ERISA's

---

[22] The Bank Defendants cite in support *Taylor v. Peoples Natural Gas Company,* 49 F.3d 982, 987-88 (3d Cir. 1995); *Harris v. Amgen,* No. CV 07-5442 PSG, 2010 WL 744123 (C.D.Cal. Mar. 2, 2010).

[23] *In re AOL Time Warner, Inc. Sec. & ERISA Litig.,* No. MDL 1500, 02-8853, 2005 WL 563166, at *4 n. 5 (S.D.N.Y. Mar. 10, 2005); *Nat'l Mgmt. Ass'n Inc. v. Transamerica Fin. Res., Inc.,* 197 F.Supp. 2d 1016, 1023-25 (S.D. Ohio 2002); *Tool v. Nat'l Employee Benefit Servs.,* 957 F.Supp. 1114, 1121 (N.D.Cal. 1996).

[24] On this point, Defendants are correct. A violation of ERISA does not arise solely because the plan fiduciaries were employees of the plan sponsor. *McMahon,* 794 F.2d at 110.

[25] The Supreme Court precedent to which the Bank Defendants refer includes *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 54 (1986); *Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 147 (1985); *Mertens v. Hewitt Associates,* 508 U.S. 248, 254 (1993); and *Varity,* 516 U.S. at 515.

"carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" *In re AOL Time Warner, Inc. Sec. & ERISA Litig.,* No. MDL 1500, 02-8853, 2005 WL 563166, at *4 n. 5 (S.D.N.Y. Mar. 10, 2005) (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 254 (1993)).

Finally, the Bank Defendants submit that Plaintiff fundamentally misconstrues the court of appeals decision in *McMahon,* in that the court of appeals was not talking about holding the employer liable for the breach of the fiduciary's duties. Rather, the Bank Defendants posit that what the court of appeals meant by the statement, "if a beneficiary or participant can show that the plan fiduciaries breached their duties, he may also be able to recover damages, for the benefit of the plan, directly from the employer", was that if the participants can establish that the fiduciaries breached their duties in failing to pursue the employer for breach of contract for non-payment of pension contributions, then the participants may stand in the shoes of the plan fiduciaries and maintain a *derivative* action against the employer for unpaid contributions. In any event, the Bank Defendants point out that *McMahon* was decided one year before the Supreme Court's decision in *Pilot Life,* which was the first Supreme Court decision on preemption that clearly rejected the assumption that an expansive interpretation of the enforcement provisions under §502 of ERISA was permitted or that common law principles could be easily imported.

Although there appears to be some conflict among the various courts of appeals as to whether *respondeat superior* may be invoked to impose liability against a non-fiduciary employer/plan sponsor under ERISA for a breach of fiduciary duty by the employer's/plan sponsor's agent/employee, the majority of circuits, including the Third Circuit, appear to allow such theory of recovery, but apply slightly different tests. *See, e.g., McMahon,* 794 F.2d at 109

31

("if a beneficiary or participant can show that the plan fiduciaries breached their duties, he may also be able to recover damages, for the benefit of the plan, directly from the employer.") (citing *Struble v. New Jersey Brewery Employees Welfare Trust Fund,* 732 F.2d 325 (3d Cir. 1984)); *Am. Fed'n of Unions Local 102 Health & WelfareFund v. Equitable Life Assurance Soc'y,* 841 F.2d 658, 665 (5th Cir. 1988) ("The doctrine of *respondeat superior* can be a source of liability in ERISA cases . . .. For *respondeat superior* liability to attach, the employee must have breached his duty to a third party while acting in the course and scope of his employment[,]" and the employer must have "actively and knowingly participated" in the breach of duty);[26] *Hamilton v. Carell,* 243 F.3d 992, 1002-03 (6th Cir. 2001) (declining to reach the broader question of whether the doctrine of *respondeat superior* applies in ERISA cases alleging a breach of fiduciary duty, but observing that the doctrine would be applicable only if the employee who breached fiduciary duties did so in the course and scope of his employment with the employer; rejecting the "active and knowing participation" requirement imposed by the Fifth Circuit in *American Federation*);[27] *Howell v. Motorola, Inc.,* 337 F.Supp. 2d 1079, 1095 (N.D.Ill. 2004) (declining to grant a motion to dismiss an ERISA claim against an employer under *respondeat superior* doctrine, noting Seventh Circuit had not held *respondeat superior* doctrine was inapplicable to ERISA claims); *Kling v. Fidelity Mgmt. Trust Co.,* 323 F.Supp. 2d 132, 147 (D.Mass. 2004) (holding claim may be stated under ERISA based on *respondeat superior* liability); *Meyer v. Berkshire Life Ins. Co.,*

---

[26] In *American Federation*, the court of appeals found that the employee did not breach his fiduciary duties while acting in the scope of his employment as an insurance agent for his employer, which duties included soliciting applications for life and health insurance policies and annuity contracts. 841 F.2d at 665. Rather, the court of appeals found that the employee breached his fiduciary duties to the fund while he was granting and denying benefit claims and carrying on activities as the fund administrator, which actions were clearly beyond the scope of his duties as an insurance agent. *Id.* Consequently, the court of appeals concluded that these facts did not support imposition of *respondeat superior* in that case. *Id.*

[27] In *Hamilton,* the court of appeals determined that the employee-fiduciary's function of providing investment services to trust fund was not in the course and scope of his employment as comptroller of employer. 243 F.3d at 1003.

250 F.Supp. 2d 544, 563 (D.Md. 2003) (observing as *dictum* that the employer would also be derivatively liable for its fiduciary-employee's breach under vicarious liability theory if Fourth Circuit were to adopt one of the various tests advanced by the other courts of appeals) (footnote omitted), *aff'd* 372 F.3d 261 (4th Cir. 2004). *Compare Crocco v. Xerox Corp.,* 137 F.3d 105, 107-08 (2d Cir. 1998) (holding employer was not a *de facto* administrator where plan documents clearly indicated employer was neither the plan administrator nor plan trustee, and therefore, could not be held liable on denial of benefits claim under §1132(a)(1)(B)); *AOL Time Warner, Inc. Sec. & ERISA Litig.,* No. MDL 1500, 02 Civ. 8853, 2005 WL 563166, *4 n. 5 (S.D.N.Y. Mar. 10, 2005) (rejecting claims against employer for alleged breaches of fiduciary duty by administrative committees, investment committees and board of directors, based on *respondeat superior* doctrine, based on section 3(21)(A) , 29 U.S.C. §1002(21)(A), which imposes liability only upon named fiduciaries and *de facto* fiduciaries who exercise actual or discretionary control over management or disposition of plan assets, and the Supreme Court's unwillingness to infer causes of action in the ERISA context); *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1325 (9th Cir. 1985) (although defendant's employees served on committee vested with fiduciary responsibility for determining claims, that alone did not make defendant-employer a fiduciary with regard to the committee's acts).

Whether *respondeat superior* liability may be invoked to hold the employer/plan sponsor liable for its employee-fiduciaries' breach of fiduciary duties is a question this Court need not reach because, as discussed above, Plaintiff has failed to show that CBC and BIC breached a fiduciary duty in the first instance.  Thus, there is simply no underlying violation/liability upon which to hold the Bank Defendants vicariously liable, assuming such a claim is viable.  *See McMahon,* 794 F.2d at 109 ("employer cannot be sued by the participants or beneficiaries under

Section 502(a)(2), 29 U.S.C. §1132(a)(2), without first establishing that the fiduciaries breached their fiduciary duties.") (citing *Struble,* 732 F.2d at 338).   Accordingly, the Court finds that Plaintiff has failed to state a plausible claim for her proposed Sixth Claim, and therefore, allowing leave to amend the complaint to add this claim would be futile.

### 4.        Insurance Defendants

In her proposed amended complaint, Plaintiff seeks to add new allegations which purportedly establish that named Defendants LINA and CIGNA Corp., as well as newly added Defendants Connecticut General Corporation and CIGNA Holdings, Inc., are fiduciaries. However, the Court finds that the factual allegations do not establish that any of the Insurance Defendants or newly proposed insurance defendants are fiduciaries, or that they breached any fiduciary duty.

In reaching this conclusion, the Court is guided by the court of appeals decision in *Confer v. Custom Engineering Company,* 952 F.2d 34 (3d Cir. 1991).   In *Confer,* a participant in an employee health benefit plan brought suit in federal court against his employer, who was the plan administrator and fiduciary, as well as against the officers of the employer corporation, alleging breach of fiduciary duty in denying his claim.   The plaintiff in that case also sued the plan's third-party administrator, who was delegated the day-to-day administrative responsibilities for the plan.   Particularly relevant here, the *Confer* court found that the third-party administrator was not a fiduciary with regard to its day-to-day administration, and therefore, was not responsible for wrongfully denying benefits to the plaintiff.   *Id.* at 39.   In reaching this conclusion, the court of appeals explained:

> Since discretionary authority, responsibility or control is a prerequisite to fiduciary status, it follows that persons who perform purely ministerial tasks, such as claims processing and calculation,

34

> cannot be fiduciaries because they do not have discretionary roles. *See* Dep't of Labor Interpretative Bulletin, 75-8, 29 C.F.R. § 2509.75-8 (1991). [The third-party administrator] had no discretion to deny or allow Confer's claim. [It] had an obligation to follow the written plan instrument and to follow instructions of the [plan] administrator.

*Id.* Moreover, the court of appeals found no basis in the plan documents or anywhere else in the record to support Confer's assertion that the third-party administrator exercised discretionary authority or control. *Id.*

In the case at bar, the new allegations Plaintiff seeks to add regarding the Insurance Defendants purportedly establish three main points: (1) that the four Insurance Defendants constitute an integrated enterprise, each acting on behalf of the others, such that each acted as the alter ego of the others and as a mere façade for the operations of the others sufficient to pierce the corporate veil of each (Prop. Am. Compl., ¶33); (2) by engaging in a pattern and practice of employing a series of logos and service marks, the Insurance Defendants misled and confused lay persons into concluding CIGNA was an actual entity and not merely a service mark (*id.* at ¶34); and (3) that CIGNA was vested with discretionary authority in the administration of the Plan (*id.* at ¶¶ 32, 41, 43). The allegations contained in paragraphs 28 through 31, 33 and 34 are simply immaterial to Plaintiff's claim for LTD benefits under §1132(a)(1)(B), nor do those allegations have any relevancy to CIGNA's or LINA's status as a fiduciary, or any of the other new claims asserted in the proposed amended complaint.

Likewise, the allegations contained in paragraphs 32, 41 and 43 do not establish that any of the existing or proposed new Insurance Defendants acted as fiduciaries vis a vis plan administration. Rather, the new allegations state merely that the Insurance Defendants provided claims administration services, including collecting medical records from doctors and

information from Plaintiff regarding her inability to work, scheduling medical evaluations, and making *recommendations* regarding a determination of claims for benefits both initially and on administrative appeal. Prop. Am. Compl., ¶¶ 32, 41(a)-(k), 43. The conduct described by Plaintiff in paragraphs 32 and subparagraphs (a) through (k) of paragraph 41 all constitute ministerial acts similar to those engaged in by the third party administrator in *Confer* whom the court of appeals found had not acted in a fiduciary capacity in performing day-to-day administration. Indeed, the SPD identifies CIGNA Group Insurance as the "Claims Administrator," which "performs certain claims administrative functions for the Plan." SPD at 25. Moreover, the proposed amended complaint alleges only that CIGNA *recommended* the denial of benefits, which does not rise to the level of discretion needed to constitute a fiduciary act. As the Supreme Court opined in *Varity,* fiduciary status attaches only to the entity who has *final* authority to authorize or disallow a claim for benefits under the plan. 516 U.S. at 512 (emphasis added). Here, it is clear that the CBC is the entity that was both vested with, and in fact exercised, discretion to deny the initial claim for benefits as well as the appeal. Prop. Am. Compl., ¶¶ 44, 53; Plan, §5.3(a)(i).

Accordingly, as none of the allegations in the proposed amended complaint suggests that any of the existing or proposed new Insurance Defendants acted in a fiduciary capacity with regard to administration of the Plan, or provided the insurance policy to fund the Plan, allowing Plaintiff leave to file the proposed amended complaint to add Connecticut General Corporation and CIGNA Holdings, Inc. as party-defendants, as well as the new allegations regarding all of the Insurance Defendants, would be futile.

## III.  MOTIONS TO DISMISS

Having concluded that it would be futile to allow Plaintiff leave to file the proposed amended complaint, the Court will now consider Defendants' motions to dismiss the claims against the non-Plan Defendants as improper parties and Plaintiff's request for a jury trial.

### A.  <u>Standard of Review</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1960 (May 18, 2009) (citing *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal* at 1949 (citing *Twombly* at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57).  The court of appeals expounded on this standard in its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*.

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient

factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler* at 210-11. Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id.* (citing *Phillips* at 234-35).

Courts generally consider only the allegations of the complaint, its attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint may also be weighed if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). A district court may consult those documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). As Plaintiff's claims are based on the Plan Document and SPD, the Court may consider these documents, attached as Exhibits 1 and 2, respectively, to the Second Declaration of Sheila Miller (Doc. No. 23-2), in ruling on the motions to dismiss without converting them to summary judgment motions.

**B.** **Analysis**

The Mellon Defendants and Insurance Defendants, by separate motion,[28] seek dismissal of the Complaint in its entirety as to all non-Plan Defendants as improper parties and request dismissal of Plaintiff's request for a jury trial.

### 1. The Mellon Defendants Are Improper Parties

The Mellon Defendants submit that the claims against the non-Plan Mellon Defendants should be dismissed because the only proper party defendant in a claim to recover benefits under 29 U.S.C. § 1132 (a)(1)(B) is the Plan. Defendants reason that based on the plain and unambiguous language of §§1132(a)(1)(B), (d)(1) and (d)(2), any judgment against the Plan is enforceable only against the Plan; hence, no other party is necessary to a claim for benefits. Moreover, although ERISA does allow other parties to be held personally liable under certain exceptions specifically delineated under ERISA, such as breach of a fiduciary duty under §1109(a), the facts here do not support an exception.

In opposition, Plaintiff contends that she is also proceeding in this case under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which permits equitable relief. The Plaintiff argues that because § 1132(a)(1)(B) only permits money damages, and does not allow for equitable relief in the form of injunctions, the "Defendants' claim that recovery is limited to a judgment against the Plan itself is meritless." (Pl.'s Br. in Opp'n (Doc. No. 31) at 15). Plaintiff also contends that the non-Plan Defendants are fiduciaries and therefore could be found personally liable under one of the exceptions.

---

[28] The Insurance Defendants incorporate by reference in their brief in support of the motion to dismiss the arguments raised by the Mellon Defendants in their supporting brief.

The claims Plaintiff asserts in her Complaint are predicated solely upon §1132(a)(1)(B), which provides in relevant part:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought--
>
>> (1) by a participant or beneficiary—
>>
>> . . .
>>
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. §1132(a)(1)(B). With regard to the status of an employee benefit plan as an entity, Section 1132(d) provides in relevant part:

> (1) An employee benefit plan may sue or be sued under this subchapter as an entity. Service of summons, subpena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan. . . .
>
> (2) Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

29 U.S.C. §1132(d).

The issue raised by the pending motions to dismiss is whether the Plan is the only proper defendant in a suit to recover benefits under 29 U.S.C. §1132(a)(1)(B). The courts of appeals have disagreed on whether a plan is the only proper defendant in a suit to recover benefits under §1132(a)(1)(B). In *Gelardi v. Pertec Computer Corporation*, 761 F.2d 1323 (9th Cir. 1985), the United States Court of Appeals for the Ninth Circuit held that suits to recover benefits may only

proceed against the plan itself. *Id.* at 1324-25. In so concluding, the court of appeals relied on the statutory language in 29 U.S.C. §§1132(a)(1)(B) and 1132(d)(2).

Similarly, in *Jass v. Prudential Health Care Plan Inc.,* 88 F.3d 1482, 1490 (7th Cir. 1996), the United States Court of Appeals for the Seventh Circuit, citing *Gelardi*, held that suits to recover benefits may only be against "the Plan as an entity." However, in subsequent decisions by the Seventh Circuit, it clarified its holding in *Jass,* which it described as *dicta. See, e.g., Mein v. Carus Corp.*, 241 F.3d 581, 584-85 (7th Cir. 2001); *Garratt v. Knowles,* 245 F.3d 941, 949 n. 7 (7th Cir. 2001). In *Mein,* the court of appeals stated that although ordinarily the only proper defendant in an ERISA suit to recover benefits is the plan, it noted an exception where the employer was the plan administrator, and the employer and plan are closely intertwined, with the plan documents referring to the plan and employer-corporation interchangeably. 241 F.3d at 584-85; *see also Garratt,* 245 F.3d at 949 n. 7 (citing *Mein, supra*); *Neuma, Inc. v. AMP, Inc.,* 259 F.3d 864, 872 n. 4 (7th Cir. 2001) (citing *Jass, Garratt,* and *Mein, supra*) (other citation omitted). In *Mein,* the corporation was also the designated agent for service of process on the plan, and the plan trustee with whom the participant most often communicated, used corporation stationary to communicate benefits information. 241 F.3d at 585. Under those facts, the court of appeals concluded that the participant's suit against both the plan and the corporation was proper.

Other courts of appeals have held that both the plan and plan administrator may be proper defendants in a suit to recover benefits under 29 U.S.C. § 1132 (a)(1)(B). The United States Court of Appeals for the Second Circuit has held that "in a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509-10 (2d Cir. 2002)

(citing *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989); *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998)). Similarly, the United States Court of Appeals for the Eleventh Circuit has held that "the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (citing *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988); 29 U.S.C. §1132(d)(1)) (other citation omitted). The United States Court of Appeals for the Eighth Circuit agreed in *Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir. 1998), upholding summary judgment in favor of the employer who was not the plan administrator, on the basis that it was not a proper party defendant (citing *Garren,* 114 F.3d at 187). In *Daniel*, the Sixth Circuit held that "[u]nless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." 839 F.2d at 266.

Although the United States Court of Appeals for the Third Circuit has not yet addressed the precise issue before this Court, it has taken the position recently that the only proper defendant in a §1132(a)(1)(B) claim is "the plan itself (or plan administrators in their official capacities only)." *Graden v. Conexant Systems Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) (citing *Chapman,* 288 F.3d at 509-10); *see also Hahnemann v. All Shore, Inc.,* 514 F.3d 300, 308 (3d Cir. 2008) (citing *Graden, supra*). In *Graden,* a former employee sued fiduciaries of a retirement plan under §1132(a)(2), alleging mismanagement of plan assets, which caused a reduction in his benefits. In noting that the employee could have also brought a claim for benefits under §1132(a)(1)(B) but that he had a good reason for not doing so,[29] the court of appeals focused on

---

[29] The *Graden* court explained why it was prudent for plaintiff not to bring a claim under §1132(a)(1)(B):

> Using a § 1132(a)(1)(B) suit to force the plan to use money already allocated to others' accounts to make good on [plaintiff]'s loss would present a host of difficulties with which few sensible plaintiffs would want to contend. Indeed, it may be that ERISA's fiduciary obligations prevent plans from paying judgments

a key difference between sections 1132(a)(1)(B) and 1132(a)(2): who is a proper party defendant. The *Graden* court explained that in a §1132(a)(1)(B) claim, "the proper defendant is the plan itself (or plan administrators in their official capacities only)." 496 F.3d at 301 (citing *Chapman,* 288 F.3d at 509-10). Whereas, in a §1132(a)(2) claim, the proper defendant is a plan fiduciary in its individual capacity. *Id.* (citing *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 235 (3d Cir. 2005)).

More recently, in a non-binding, not for publication opinion, the court of appeals ruled that "[i]n a claim for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan." *Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.,* 311 F. App'x 556, 558 (3d Cir. 2009) (citing 29 U.S.C. §1132(a)(1)(B)). In *Evans,* the employee-participant brought suit against her employer and MetLife, which administered the employer's disability insurance plan, for wrongful denial of long-term disability benefits under ERISA. In affirming the district court's dismissal of the employer as an improper party, the court of appeals opined that the defining characteristic of the proper defendant under §1132(a)(1)(B) is the exercise of control over the administration of benefits.[30] *Id.* at 558. Because the employee failed to show that her employer had any authority or responsibility for administering benefits under the plan, the court of appeals held the employer

---

out of funds allocable to other participants, in which case the plan, though liable, would be judgment proof. Thus, for most plaintiffs the sensible route is to use §1132(a)(2) to get the money in the first instance from a solvent party liable to make good on the loss, not from the plan itself. This does not, however, change the underlying nature of [plaintiff]'s claim as one for benefits; it merely changes his mechanism for recovery.

496 F.3d at 301.

[30] Under this test, Plaintiff would be unable to show that the non-Plan Defendants, with the exception of the CBC, were fiduciaries, as neither the Complaint nor the Plan documents show that the non-Plan Defendants, other than the CBC, have any authority or responsibility for administration of the Plan benefits to establish fiduciary status.

was not a proper party defendant. *Id.* at 558-59 (citing *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226 (3d Cir. 1994); *Daniel,* 839 F.2d at 266).

In reaching this conclusion, the *Evans* court relied on *Curcio,* decided by another panel of the court of appeals, for the proposition that entities other than the plan may be proper parties in a recovery of benefits claim under §1132(a)(1)(B). However, it appears that the *Evans* court gave an overly expansive construction to the holding in *Curcio. See Petroff v. Verizon North, Inc.,* Civ. A. No. 02-318E, slip. op. at 4 (W.D.Pa. June 10, 2003) (Judge McLaughlin concluded that the district courts in the Third Circuit, which relied on *Curcio* for the proposition that entities other than the plan are proper defendants in a recovery of benefits claim under §1132(a)(1)(B), had engaged in an overly expansive reading of *Curcio.*)

In *Curcio*, the court of appeals was asked to determine whether the employer was a fiduciary and thus a proper party against whom the plaintiff could seek equitable relief based on breach of fiduciary duty and equitable estoppel theories pursuant to §§1109 and 1132(a)(3)(B). Significantly, *Curcio* did not involve a claim for benefits under §1132(a)(1)(B). Indeed, that remedy was not available because the plan did not offer any supplemental life insurance option. Therefore, Mrs. Curcio's breach of fiduciary duty and equitable estoppel claims against her deceased spouse's employer were predicated on affirmative misrepresentations allegedly made by the employer to her spouse regarding supplemental life insurance benefits. The employer attempted to argue that it was not a proper party because ERISA permits suits to recover benefits against the plan as an entity and against the fiduciary of the plan, and it was neither a plan nor a fiduciary. 33 F.3d at 233. The court of appeals agreed that the employer was not a plan, but disagreed that it was not a fiduciary. *Id.* In its employee benefits booklet, the employer described itself as the plan administrator, and the employer announced the new plan to its

44

employees through meetings and literature describing the plan and each amendment, which it prepared and distributed. *Id.* at 234. Based on this evidence, the court of appeals concluded that the employer maintained sufficient discretionary authority and responsibility in the administration of the plan to meet the definition of a fiduciary under ERISA, §1002(21)(A)(iii), thus making it a proper party in claims under §§1103 and 1132(a)(3). *Id.*

Thus, "*Curcio* stands for the proposition, not applicable here, that a plan administrator who breaches its fiduciary duty may be sued under §1132(a)(3)(B) under the theory of equitable estoppel or under §1109 for breach of fiduciary duty." *Guiles v. Metro. Life Ins. Co.,* No. CIV.A. 00-5029, 2002 WL 229696, *2 (E.D. Pa. Feb., 13, 2002) (footnote omitted). Moreover, the *Curcio* court was not presented with the opportunity to address the effect of §1132(d)(2) on subsection (d)(1), since a §1132(a)(1)(B) claim was not at issue. Therefore, the Court does not find persuasive those cases relying on *Curcio* to hold that parties other than the plan are proper parties in a recovery of benefits claim under 1132(a)(1)(B).[31]

Defendants rely on a number of district court cases in support of their position that the only proper defendant is the Plan itself. *See, e.g., Petroff v. Verizon North, Inc.,* Civ. A. No. 02-318E, Slip. Op. (W.D.Pa. June 10, 2003) (listing cases); *Smith v. Duquesne Light Company*, No. 04-0714, slip op. (W.D. Pa. April 21, 2005); *Guiles, supra.* The decisions in these cases are predicated on the district courts' interpretation of §1132(d)(2), which Defendants endorse and submit should be applied here. In essence, Defendants construe §1132(d)(2) in tandem with

---

[31] *See, e.g., Carducci v. Aetna U.S. Healthcare*, 247 F.Supp. 2d 596, 608 (D.N.J. 2003) (holding that plan administrators may be proper defendants) (citing *Curcio*, 33 F.3d at 234-35), *rev'd on other grounds sub nom. Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir. 2005); *Cimino v. Reliance Standard Life Ins. Co.*, Civ.A. No. 00-2088, 2001 WL 253791, *3 n. 2 (E.D.Pa. Mar. 12, 2001) (holding that plan administrators and fiduciaries may be proper defendants) (citing *Curcio, supra*), *aff'd* 32 F. App'x 28 (3d Cir. 2002); *Vaughn v. Metropolitan Life Ins. Co.*, 87 F. Supp. 2d 421, 424-25 (E.D.Pa. 2000) (same); *Welch v. Corestates Fin. Corp.*, Civ.A. No. 98-3533, 1999 WL 387276, *4 (E.D.Pa. June 1, 1999) (same).

§1132(d)(1) to mean that only when the non-plan entity is found liable in its individual capacity, *i.e.,* for its own conduct, can a court enforce a judgment against this non-plan entity. Defendants stress that this liability would be for the entity's individual conduct, not for plan benefits. In response, Plaintiff attempts to discredit those decisions by arguing that the language of §1132(d)(2) does not provide the limiting language urged by Defendants or their cited authority, and that Defendants' reasoning is flawed.[32] According to Plaintiff, the enabling language in §1132(d)(1), "[a]n employee benefit plan may sue or be sued under this subchapter as an entity," does not limit a plan's liability to actions brought pursuant to §1132(a)(1)(B), but provides that a plan may be liable for any claims otherwise maintainable against it under subchapter 1.[33] Plaintiff contends that there is no language in the statute which expressly delineates the limits of liability for non-plan defendants, such as fiduciaries.

It appears that the court of appeals recent decision in *Hahnemann* settles this dispute. In *Hahnemann,* a patient covered by the subject health benefits plan assigned his claim to benefits under the plan to the hospital, which in turn submitted a claim to the plan administrator for reimbursement. When the plan administrator failed to reimburse the hospital for the full amount claimed, the hospital sued the plan and plan administrator to recover benefits owed under 29 U.S.C. §1132(a)(1)(B), and the district court entered judgment in favor of the hospital and against both the plan and plan administrator. On appeal, the plan administrator argued, among other things, that the district court should not have entered judgment against it as an entity. In resolving this issue, the court of appeals started by noting that the judgment against the plan

---

[32] In this regard, Plaintiff submits that Defendants' reasoning is flawed, because they "rel[y] on language outlining the limited *enforceability of a judgment* rendered against a plan to conclude that the statute does not provide an independent basis for a *finding of liability* against the non-plan defendants for damages that happen to be encompassed within the judgment rendered against the plan." Pl.'s Br. in Opp'n (Doc. 31) at 5.

[33] Subchapter 1 is entitled "Protection of Employee Benefit Rights," and encompasses §§1001 through 1191c of Title 29.

administrator was not entered against it in its official capacity, but rather, had been entered against the plan administrator in its individual capacity. 514 F.3d at 309. The court of appeals reached this conclusion based on the fact that the hospital did not sue the plan administrator seeking benefits from the plan assets, *i.e.,* in its official capacity, and instead, sought recovery against both the plan and plan administrator jointly and severally. *Id.*

The *Hahnemann* court went on to explain:

> The mere fact that [the hospital] established that it was entitled to benefits from the . . . Plan did not make [the plan administrator] liable in an individual capacity. Indeed, ERISA states that, "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2). Nevertheless, this does not necessarily mean that [the plan administrator] cannot be held individually liable. [The plan administrator] can be held liable if the facts established an individual basis against it. *See id.* Two possible bases appeared to arise in this case for [the plan administrator]'s liability: (1) that [the plan administrator] agreed to be financially liable for the medical expenses the patient incurred at [the hospital]; and (2) that [the plan administrator], as [such], owed a fiduciary duty which it breached by refusing to pay the claim without any justification.

514 F.3d at 309. The court of appeals further opined:

> When a denial of "benefits due" arises from a plan administrator's breach of its fiduciary obligations to the claimant, Sections 1132(a)(1)(B) and (d) permit the beneficiary to seek redress for the breach directly from the plan administrator as a fiduciary. Indeed, as the Supreme Court has noted:
>
>> a fiduciary has obligations other than, and in addition to, managing plan assets.... For example ... a plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of plan documents.... ERISA specifically provides a remedy for breaches of fiduciary duty with respect

47

to the interpretation of plan documents *and the payment of claims*, one that is outside the framework of the second subsection ... and one that runs directly to the injured beneficiary. §502(a)(1)(B).

*Varity Corp. v. Howe*, 516 U.S. 489, 511-12, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (internal citations omitted and emphasis added). Thus, a breach of these fiduciary obligations will satisfy the limitations set forth in Section 1132(d) because there is an individual basis for recovery.

*Id.*

It is significant to note that in both *Graden* and *Hahnemann*, the court of appeals, in stating that a plan administrator could be a proper defendant in a §1132(a)(1)(B) claim, emphasized that such liability attached only to the plan administrator in its *official* capacity. The significance of this distinction is that any money judgment awarded against the plan under §1132(a)(1)(B) is not enforceable against the plan administrator; rather, the court may only order the plan administrator to pay the judgment out of the *plan assets.* *Hahnemann*, 514 F.3d at 308 ("if entitlement to benefits is established [under §1132(a)(1)(B)], the court can direct the plan administrator to pay [the benefits] from the assets of the plan, much as a trustee may be compelled to satisfy a trust obligation from trust assets.") (citation omitted).

Thus, the following precepts can be gleaned from the court of appeals discussions in *Graden* and *Hahnemann*. First, in addition to the plan itself, a plan administrator may be sued in its *official* capacity in a §1132(a)(1)(B) claim. If a participant proves entitlement to benefits under that claim against the plan, a plan administrator sued only in its *official* capacity can be directed to pay benefits only from the plan assets; the plan administrator cannot be held individually liable on the money judgment entered against the plan. In other words, the money judgment against the plan is not enforceable against the plan administrator *individually* where

said administrator is sued only in its *official* capacity. Second, the plan administrator can be held *individually* liable for a money judgment against the plan under §1132(a)(1)(B), but only if the facts establish an individual basis upon which to hold it liable, such as where the plan administrator is a fiduciary and breaches an owed duty.

Applying these precepts to the present case, the Court finds that the only proper defendants in Plaintiff's §1132(a)(1)(B) claim are the Plan and the Plan Administrator, CBC, in its official capacity. In order to state a plausible claim against the CBC for individual liability, however, Plaintiff must allege facts to show the CBC was a fiduciary and it breached a fiduciary duty owed to Plaintiff or the Plan. It is clear from the factual allegations in the Complaint and the Plan documents that CBC was the Plan Administrator at all relevant times, and as such, was vested with and exercised all discretionary authority and control over the administration of the Plan, including making the final determination to deny benefits. Therefore, CBC was clearly a fiduciary to the Plan.

However, Plaintiff does not assert facts to show a breach of fiduciary duty owed by CBC to Plaintiff in exercising its discretionary authority to deny Plaintiff's claim for continuing LTD benefits. When a fiduciary exercises a power with which it has been vested, a mere mistake in exercising that authority will not render it liable for the resulting loss. *Leckey v. Stefano,* 501 F.3d 212, 224 (3d Cir. 2007) (citing RESTATEMENT (SECOND) OF TRUSTS §201 cmts. a-c (1959)). Rather, in order for a fiduciary to be found liable in the exercise of its powers, there must be a showing of fault, in the form of bad faith, or negligence on the part of the fiduciary. *Id.* (citing *Burke v. Latrobe Steel Co.,* 775 F.2d 88, 91 (3d Cir. 1985) (to properly allege a breach of fiduciary duty in denying a claim for benefits, a plaintiff must allege more than mere error, *i.e.,* that the administrator improperly denied the claim for benefits, in discharging that duty; rather,

49

he must allege some kind of fault)).  Here the Complaint alleges that the denial of benefits was wrongful; it does not allege any facts to suggest negligence or bad faith on the part of the CBC in denying Plaintiff's claim for benefits.  Accordingly, Plaintiff has failed to allege sufficient facts under *Twombly* to establish a basis for finding CBC individually liable.

Even if Plaintiff had pled sufficient facts to show a plausible breach of fiduciary duty by the CBC, she would still be without recourse against the CBC, both in its official and individual capacities, because the CBC no longer exists as an entity.  Therefore, even if Plaintiff is able to obtain a money judgment against the Plan and prove the CBC was individually liable as a fiduciary, she would not be able to enforce the money judgment against the CBC, as it no longer exists.  For this reason alone, Plaintiff cannot maintain her §1132(a)(1)(B) claim (or any claim for that matter) against the CBC. [34]

As to the remaining non-Plan Mellon Defendants, none of them is the Plan or Plan Administrator, nor are any of them fiduciaries—*see* discussion, *supra,* at 18-23.  Consequently, no basis exists for holding them individually liable to Plaintiff.  Therefore, Mellon Bank, N.A.,[35] Mellon Financial Corporation, BNY Mellon Corp., and Sheila Miller are not proper parties.

Accordingly, the Court will grant the Mellon Defendants' motion to dismiss the Complaint against the non-Plan Mellon Defendants, including the CBC.

---

[34] It should be noted that the current plan administrator also would not be a proper party to a §1132(a)(1)(B) claim in its individual capacity because a fiduciary cannot be held liable for breaches that occurred before it became a fiduciary.  *Pegram,* 530 U.S. at 225-26.  However, it appears that the current plan administrator can be sued in its official capacity under §1132(a)(1)(B).  *Hahnemann,* 514 F.3d at 308.

[35] Plaintiff's argument to the effect that the Plan Sponsor, Mellon Bank, N.A., is a proper defendant because there is no plan administrator, and under 29 U.S.C. §1002(16)(A)(ii), the default administrator is the plan sponsor, is unavailing.  The Plan does designate a Plan Administrator and therefore, the Court finds the default rule is not triggered here.  Also, Mellon Bank, N.A. no longer goes by that name, as it was changed to BNY Mellon, N.A.

### 2.    The Insurance Defendants

In support of their motion to dismiss, LINA and CIGNA submit that Plaintiff does not plead in her Complaint (or, for that matter, in her proposed amended complaint) any facts from which it could be inferred that either LINA or CIGNA would be liable to her for LTD benefits payable by the Plan. The Insurance Defendants further contend that the facts, as alleged, do not show that either LINA or CIGNA underwrote the LTD Plan's benefits or issued an insurance policy under which LTD benefits of the Plan were funded or paid, nor does the Complaint allege any facts to establish that LINA or CIGNA was a plan administrator or fiduciary.

As discussed in the previous section, since Plaintiff's claim for benefits is brought exclusively under §1132(a)(1)(B), the Plan and Plan Administrator in its official capacity are the only proper defendants. The Insurance Defendants clearly are not the Plan. Moreover, the factual allegations in the Complaint and the Plan documents make clear that the Insurance Defendants are not the designated Plan Administrator, nor did they have any discretionary authority with regard to the administration of the Plan or payment of the claims. Accordingly, they are not fiduciaries. *See* discussion, *supra*, at 34-36. Therefore, no basis exists for finding them liable in their individual capacities. Accordingly, LINA and CIGNA are not proper parties to this action. Therefore, the Court will grant the Insurance Defendants motion to dismiss the Complaint against them.

### 3.    Plaintiff's Right to a Jury Trial

All of the Defendants have moved to dismiss Plaintiff's request for a jury trial, and Plaintiff has not opposed this aspect of Defendants' motion. The court of appeals has held a §1132(a)(1)(B) claim for benefits is equitable in nature, and hence, the plaintiff is not entitled to a jury trial. *See e.g., Cox., Keystone Carbon Co.*, 894 F.2d 647, 649 (3d Cir. 1990); *Pane v. RCA*

*Corp.*, 868 F.2d 631, 636 (3d Cir. 1989); *Turner v. CF & I Steel Corp.*, 770 F.2d 43, 47 (3d Cir. 1985). The Defendants' Motions to Dismiss Plaintiff's Demand for a Jury Trial will be granted.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Leave to File an Amended Complaint (Doc. No. 34) will be granted in part and denied in part. Plaintiff's motion will be granted as to the addition of the current Plan Administrator in its official capacity only, and denied in all other respects. In addition, the Motion to Dismiss (Doc. No. 9) filed by the Mellon Defendants, and the Motion to Dismiss (Doc. No. 23) filed by the Insurance Defendants, will be granted. Finally, the Motion to Dismiss Plaintiff's demand for a jury trial filed by all of the Defendants will be granted.

An appropriate Order will follow.


Dated:  June 25, 2010                                    By the Court:

                                                         _____
                                                         LISA PUPO LENIHAN
                                                         U.S. Magistrate Judge


    cc:      All Counsel of Record
             *Via Electronic Mail*